IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| A.P.I. INC., <br><br> *Plaintiff,* <br><br> v. <br><br> BROADWAY ELECTRIC SERVICE CORPORATION, <br><br> *Defendant.* | Civil Action No. 2:23-cv-552 <br><br> Hon. William S. Stickman IV |

## OPINION

WILLIAM S. STICKMAN IV, United States District Judge

Plaintiff A.P.I. Inc. ("API") asks the Court to enter a preliminary injunction enjoining the arbitration initiated by Defendant Broadway Electric Service Corporation ("BESCO"). The parties' contract contains an arbitration clause, but API argues that BESCO waived its right to invoke the benefit of that clause by filing a third-party complaint against API in the case of *Justin Beauregard v. BESCO*, Civil Action No. 2:21-cv-01600 ("*Beauregard*"). For the reasons explained below, the Court holds that BESCO's conduct in the *Beauregard* litigation did not waive its right to invoke arbitration under the terms of the parties' arbitration agreement. Rather, BESCO's act of filing a third-party complaint was expressly permitted by that agreement. A contextual examination of the language of the arbitration clause and BESCO's conduct in the *Beauregard* litigation leads the Court to conclude that BESCO did not repudiate or otherwise abandon its right to arbitrate disputes with API. As a result, API cannot demonstrate reasonable likelihood of success on the merits of its claim and preliminary injunctive relief is not appropriate.

1

Case 2:23-cv-00552-WSS    Document 33    Filed 05/16/23    Page 2 of 18

## I.    STANDARD OF REVIEW

The grant or denial of a preliminary injunction is within the sound discretion of a district court. *See Reilly v. City of Harrisburg*, 858 F.3d 173, 178–79 (3d Cir. 2017) ("District courts have the freedom to fashion preliminary equitable relief so long as they do so by 'exercising their sound discretion.'" (citation omitted)). The primary purpose of preliminary injunctive relief is "maintenance of the status quo until a decision on the merits of a case is rendered." *Acierno v. New Castle Cnty.*, 40 F.3d 645, 647 (3d Cir. 1994). The "status quo" refers to "the last, peaceable, noncontested status of the parties." *Kos Pharm., Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004).

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). Rather, such relief "should be granted only in limited circumstances." *Kos Pharms.*, 369 F.3d at 708 (citation omitted). A moving party "must establish entitlement to relief by clear evidence." *Doe v. Boyertown Area Sch. Dist.*, 897 F.3d 518, 526 (3d Cir. 2018). Specifically, the movant must demonstrate:

> (1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief.

*Kos Pharms.*, 369 F.3d at 708; *see also Winter*, 555 U.S. at 20. The first two factors are "the most critical," and the moving party bears the burden of making the requisite showings. *Reilly*, 858 F.3d at 176, 179 (citations omitted). Once those "gateway factors" are met, a court should "consider[] the remaining two factors" and then "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

In reaching its decision on a request for injunctive relief, a district court sits as both the trier of fact and the arbiter of legal disputes. A court must, therefore, make "findings of fact and

conclusions of law upon the granting or refusing of a preliminary injunction." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1178 (3d Cir. 1990) (citing Fed. R. Civ. P. 52(a)(2)). This "mandatory" requirement of Federal Rule of Civil Procedure Rule 52(a)(2) must be met "even when there has been no evidentiary hearing on the motion." *Id.* Nevertheless, at the preliminary injunction stage, "procedures [] are less formal and evidence [] is less complete than in a trial on the merits." *Kos Pharms.*, 369 F.3d at 718; *see also AT&T Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994) ("[T]he grant or denial of a preliminary injunction is almost always based on an abbreviated set of facts, requiring a delicate balancing [that] is the responsibility of the district judge." (citations omitted)). Accordingly, a court "may rely on affidavits and hearsay materials which would not be admissible evidence." *Kos Pharms.*, 369 F.3d at 718 (quoting in parenthetical *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995)). But the weight given to such materials will "vary greatly depending on the facts and circumstances of a given case." *Id.* at 719. A court is also tasked with assessing the credibility of witness testimony and may base the decision to grant or deny a preliminary injunction on credibility determinations. *See, e.g., Hudson Glob. Res. Holdings, Inc. v. Hill*, 2007 WL 1545678, at *8 (W.D. Pa. May 25, 2007). Here, the Court will consider all the materials filed on the docket as well as the docket in *Beauregard* as it is undisputed that these two matters are interrelated.

## II. FACTUAL BACKGROUND

In late 2018, API and BESCO entered into a Subcontract (effective November 9, 2018) under which BESCO agreed to provide electrical services and materials in support of a massive construction project for Shell Chemical Appalachia LLC ("Shell") in Monaca Borough, Beaver County, Pennsylvania (the "Monaca Facility"). (ECF No. 1, p. 2); (ECF No. 1-2); (ECF No. 15,

pp. 8-9). The Subcontract contains a number of indemnification provisions (ECF No. 1-2), and also states that "Subcontractor will be bound by any dispute, mediation, or arbitration provisions in the General Contract in the same manner and method as Contractor is bound to Owner. Any action, suit, or arbitration under this Agreement will be brought and maintained in the county where the Project is located." (*Id.* at 18). The Subcontract "shall be governed by the laws of the State of Pennsylvania." (*Id.*). Article 27, Resolution of Disputes, contained in the Shell Chemical Appalachia LLC, Project Franklin, Engineer, Procure and Construct (EPC) implementation Contract, Exhibit A – General Conditions of Contract states:

37.1 **Dispute Resolution.** The CONTRACTOR and COMPANY agree to exclusively resolve any DISPUTE arising out of or relating to this CONTRACT, including its validity, interpretation, formation, construction, breach, performance, termination and enforcement in accordance with this Article, except that if either or both PARTIES are sued by a third party (not bound by this CONTRACT) in a court proceeding, each PARTY can assert any indemnity claim or any other claim against the other in the court proceeding.

37.2 **Procedures.** The PARTIES endeavour to settle any DISPUTE by consultation between the PARTIES in accordance with the Dispute Resolution Protocol, set out in Exhibit A, Appendix A-1 - DISPUTE RESOLUTION PROTOCOL.

In the event of failure of such consultations within sixty (60) days (unless otherwise extended by mutual agreement) after receipt of the respondent party of the written notice of such matter, then the DISPUTE is to be finally and exclusively resolved by arbitration applying the governing law set out in Article 36.5 in accordance with the then current Construction Industry Rules of the American Arbitration Association ("AAA Rules"). The arbitration will be held in Houston, Texas. USA. The DISPUTE will be decided by one (1) arbitrator, to be appointed in accordance with the AAA Rules, unless a PARTY asserts the amount in controversy exceeds USD\$5,000,000 or a PARTY asserts the right to equitable relief. In such case, three (3) arbitrators will be selected in accordance with the AAA Rules, unless both parties elect to have the DISPUTE resolved by a single arbitrator. Where necessary, the decision in arbitration may be enforced by any court having jurisdiction.

37.3  **No Prejudice to Contract Provisions**
Whilst any matter or matters are in DISPUTE, the CONTRACTOR shall proceed with the execution and completion of the WORK and both the CONTRACTOR and the COMPANY shall comply with all the provisions of the CONTRACT

(ECF No. 1-8, p. 11); (ECF No. 15-1, p. 167).   Appendix A-1 to this contract is the "Dispute Resolution Protocol" ("Protocol").  (ECF No. 1-9); (ECF No. 15-1, pp. 24-27).

On October 21, 2021, former BESCO employee Justin Beauregard filed a class-action complaint against BESCO in the Beaver County Court of Common Pleas.  (*Beauregard* ECF No. 1-1).  He alleged that BESCO employed individuals to perform work at the Monaca Facility and failed to pay these individuals all regular and overtime wages due to them in violation of the Pennsylvania Minimum Wage Act of 1968 ("PMWA"), 43 P.S. §§ 333.101 to 333.115. (*Beauregard* ECF 1-1 at ¶¶ 5, 9-11, 24).  BESCO moved Beauregard's complaint to this court on November 5, 2021, and then on December 27, 2021, it sought to dismiss the complaint. (*Beauregard* ECF Nos. 1 and 8).  The Court denied BESCO's motion.  (*Beauregard* ECF Nos. 13 and 14).  On August 23, 2022, the Court ordered the parties to attend a mediation session pursuant to L.Civ.R. 16.2.  (*Beauregard* ECF No. 25).  Discovery in *Beauregard* commenced on August 23, 2022 and was set to conclude on January 20, 2023.  (*Beauregard* ECF No. 24).

On October 17, 2022, with prior Court approval, BESCO filed a third-party complaint against API in the *Beauregard* case.  (*Beauregard* ECF Nos. 30 and 31).  It asserted claims for indemnity (Count I) and contribution (Count II) against API, both seeking in pertinent part: "Should any liability be found on the part of BESCO to Plaintiff or any other party, BESCO demands that Third Party Defendant API be held liable over to BESCO by way of contribution and/or indemnity, and/or jointly and severally liable with BESCO, on all claims alleged by

Plaintiff and any other party, together with costs of suit, fees, and such other relief as the Court deems just proper and equitable." (*Beauregard* ECF No. 31, p. 8); (ECF No. 1-3, p. 9).

API was brought into the case too late to participate in the formal discovery process between the *Beauregard* plaintiffs and BESCO.  BESCO and API later acknowledged that API had not participated in the discovery process.  (*Beauregard* ECF No. 45, p. 2).  The extent of API's involvement in discovery was limited to requesting from BESCO copies of the discovery exchanged between it and the *Beauregard* plaintiffs.  (ECF No. 1, pp. 6-8); (ECF No. 10, p. 10); (ECF No. 24, p. 9); (ECF No. 30, p. 18).

The parties – Beauregard, BESCO and API – attended an unsuccessful mediation session on December 20, 2022.  Since the parties agreed to a second mediation session, the Court stayed various case management deadlines.  (ECF No. 1, p. 7); (*Beauregard* ECF No. 44).

On January 16, 2023, API's counsel sent a letter to BESCO's counsel invoking Federal Rule of Civil Procedure 11 in *Beauregard*.  API demanded that BESCO withdraw its third-party complaint by January 20, 2023, and it sought complete indemnification from BESCO as provided by the parties' Subcontract.  (ECF No. 1, p. 7; ECF No 1-4).  On February 1, 2023, BESCO responded and declined to withdraw its complaint in *Beauregard*.  (ECF No. 1, p. 7; ECF No. 1-5).

The parties – Beauregard, BESCO and API – attended another unsuccessful mediation session on February 3, 2023.  On February 10, 2023, Beauregard, BESCO, and API's respective counsel attended a third mediation session.  The mediator excused API's counsel early in the session, while Beauregard and BESCO continued to negotiate. (ECF No. 1, p. 8); (ECF No. 30, p. 18).  Beauregard and BESCO reached an agreement in principle ($425,000) to settle Beauregard's claims on a class wide basis.  (*Beauregard* ECF No. 45); (ECF No. 1, p. 8).

On February 10, 2023, the parties agreed that API would respond to BESCO's third-party complaint on or before February 17, 2023.  (*Beauregard* ECF No. 45).  On February 16, 2023, API moved to dismiss BESCO's third-party complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.  (*Beauregard* ECF No. 46.).  BESCO was ordered to file a response by March 10, 2023.  (*Beauregard* ECF No. 47).  That same day, API served BESCO's counsel with a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 ("Rule 11").  API explained that it intended to file its Rule 11 motion on March 9, 2023, unless BESCO withdrew its third-party complaint beforehand.  (ECF No. 1, p. 8); (ECF No. 1-6).  On March 8, 2023, BESCO filed a voluntary dismissal of its third-party complaint pursuant to Federal Rule of Civil Procedure 41.  (*Beauregard* ECF No. 50); (ECF No. 1, p. 9); (ECF No. 1-7).  The Court, on March 9, 2023, dismissed BESCO's claims against API without prejudice in *Beauregard*.  (*Beauregard* ECF No. 51).

BESCO, on March 21, 2023, filed a demand for arbitration against API at American Arbitration ("AAA") Case Number 01-23-0001-1604.  (ECF No. 1, p. 9); (ECF No. 1-8).  It alleged in part:

> On October 18, 2021, hourly construction employees working for BESCO at the Monaca Facility initiated a claim against BESCO seeking compensation for all hours worked in a week in accordance with the Pennsylvania Minimum Wage Act.  The hourly construction employees alleged they received no payroll credit or compensation for required work related activities, including, for example, waiting for and riding the shuttle bus from the assigned parking lot to the job site and donning and doffing personal protective equipment.  BESCO incurred costs as a result, including, but not limited to, fees, costs, and payment to the hourly construction employees in connection with the claim in an amount in excess of $425,000.00.
>
> As a result of the costs incurred by BESCO, BESCO is entitled, under the Subcontract and Prime Contract, to be put in the same economic position by API that BESCO would have been in had it not been forced to comply with invalid provisions of the PLA.  Pursuant to the Subcontract, API required BESCO to abide by the PLA, a direction that violated applicable law.  The Prime Contract contains a severability provision, Section 36.9, which states that if any provision

of the Monaca Facility Contracts are invalid or unenforceable, "[BESCO] and [API] agree to attempt to substitute, for any invalid or unenforceable provision, a valid and enforceable provision, which achieves to the greatest possible extent, the economic, legal and commercial objectives of the invalid or unenforceable provision." Moreover, Section 33.2 of the Prime Contract states that variations in the law resulting in a material change in the contract price result in BESCO being entitled to a variation that seeks to put BESCO in the same economic position that it would have been in had the change not taken place.

In sum, as a result of the Monaca Facility Contracts requiring BESCO to abide by the invalid terms of the PLA, the parties must agree to sever the provision requiring same and BESCO must be put in the same economic position that it would have been in had it not been bound by the invalid terms of the PLA and, ultimately, incurred costs as a result. Despite this requirement,

API has refused to do so. API's failure to pay BESCO the foregoing amounts constitutes a material breach of the Subcontract for which API is liable to BESCO in a principal amount in excess of $425,000.00, exclusive of interest, costs, counsel fees, and such other relief to which BESCO may be entitled under the Subcontract, at law, or in equity, all of which BESCO intends to pursue in these proceedings.

(ECF No. 1-8, pp. 4-5). BESCO claims that it "never asserted a breach of contract claim against API in the Class Action; rather, the Third-Party Complaint contained solely indemnity/contribution claims (as was permitted under the Subcontract) based on the Class's claim for violation of the PMWA." (ECF No. 15, p. 12); (ECF No. 30, p. 12).

In this lawsuit, API is seeking to recover attorney's fees and costs incurred because of BESCO's alleged breach of contract. (ECF No. 1). API requests "a judgment pursuant to 28 U.S.C. § 2201(a) declaring that (1) the [p]arties' Subcontract is valid and enforceable, (2) BESCO has waived its purported right to arbitration by acting inconsistently with that right throughout the *Beauregard* litigation, (3) BESCO has waived its purported right to arbitration by breaching the mandatory Dispute Resolution Protocol to which the [p]arties agreed in their Subcontract, and (4) neither the American Arbitration Association nor any other arbitral body has any jurisdiction over the [p]arties' dispute." (ECF No. 1, p. 16). It wants BESCO's counsel sanctioned for "unreasonably and vexatiously multiplying the proceedings in this matter and [ ]

awarding API all excess costs, expenses, and attorney's fees incurred as a result of counsel's misconduct." (*Id.* at 17). Additionally, BESCO seeks compensatory and consequential damages as a result of BESCO's alleged breaches of the parties' Subcontract as well as attorney's fees and litigation costs for the *Beauregard* litigation, the AAA proceedings and for this action. (*Id.*).

On May 1, 2023, API filed a Motion for a Temporary Restraining Order ("TRO") and Preliminary Injunction ("motion"). (ECF No. 18). API seeks preliminary injunctive relief against BESCO to end its pursuit of arbitration proceedings at AAA Case No. 01-23-0001-1604. (ECF Nos. 1 and 18). The gravamen of the motion is that BESCO waived its right to invoke the arbitration agreement to compel arbitration by its conduct in the *Beauregard* litigation. (ECF No. 19).

Despite the pendency of API's motion (ECF No. 18), the AAA continued to move forward with the arbitration. The AAA instructed API and BESCO that it "will proceed with the administration of the arbitration absent a court order or party agreement otherwise[,]" and instructed the parties to "advise the AAA immediately" should "such an order be entered[.]" (ECF No. 27, p. 3). Consequently, on May 4, 2023, the Court issued a TRO to preserve the status quo pending decision on the motion. (ECF No. 28).

### III.   ANALYSIS

#### A. Courts may enjoin arbitration proceedings.

Although courts generally address issues relating to a movant's likelihood of success on the merits first, BESCO argues that—as a threshold matter—injunctive relief is facially unwarranted in this case because API cannot demonstrate the requisite immediate and irreparable harm by being required to proceed in arbitration. Courts have long held, however, that it is appropriate to enjoin arbitrations to protect parties from being forced to submit to arbitration

against its will and the terms of the contract. *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d. Cir. 1990) ("[T]he harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of any arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority."), *overruled on other grounds by Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002).   If parties were forced to litigate a case to conclusion in arbitration, only to later determine that the arbitrator(s) lacked jurisdiction—rendering the proceedings a nullity—the parties would not only have been forced to waste resources, but also time.   There is truth to the adage that justice delayed is justice denied.   Thus, a court may use its equitable powers to enjoin an arbitration where the prerequisites for injunctive relief are established.

### B. API has not demonstrated likelihood of success on the merits.

In order to obtain the requested preliminary injunctive relief, API must demonstrate "it can win on the merits." *Reilly*, 858 F.3d at 179.   At this preliminary stage, API need not make "a more-likely-than-not showing of success on the merits." *Id.* at 179, n.3.   Instead, it must "show a *likelihood* of success on the merits (that is, a reasonable chance, or probability, of winning)." *Singer Mgmt. Consultants v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011) (*en banc*) (emphasis in original).   This "requires a showing significantly better than negligible but not necessarily more likely than not." *Reilly*, 858 F.3d at 179.   API argues that it will likely succeed on the merits of its claims.   API contends that BESCO evinced an intent to litigate its claims and waived its right to arbitration by selecting federal court as a forum for its claims by filing the third-party complaint against API in *Beauregard,* litigating those claims for months, and withdrawing them when presented with a dismissal and sanctions motion by API.   (ECF No. 19, p. 5).   The Court

assesses the situation differently and holds that API has not demonstrated reasonable likelihood of success on the merits.

There is no question that the contract between BESCO and API contains an arbitration clause. The gist of API's argument is that BESCO waived its right to invoke the benefits of that clause because of its prior conduct in the *Beauregard* litigation—specifically, its decision to assert claims against API in its third-party complaint. In determining whether API has demonstrated a reasonable likelihood of success on the merits, the Court must decide whether BESCO's conduct will likely be found to have effectuated a waiver.

The way that courts within the Third Circuit look at assertions of waiver in the arbitration context has been recently recalibrated by Supreme Court's decision in *Morgan v. Sundance, Inc.*, 142 S.Ct. 1708,---U.S.--- (2022). Prior to *Morgan*, the United States Court of Appeals for the Third Circuit and a majority of the courts of appeal required a showing of prejudice in order to establish waiver in the arbitration context. Under that rubric, a party could waive its arbitration rights by litigating only when its conduct prejudiced the other side. *Id.* at 1711. In *Morgan*, the Supreme Court pointed out that this rule varied from the general approach taken to contractual waiver, applying only in the context of arbitration. *Id.* It rejected a special rule for the arbitration context, holding instead that waiver in the arbitration context should be treated the same as for any other contractual clause. "The FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules [...]. The policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" *Id.* at 1713 (internal citations omitted). The Court held:

> Accordingly, a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation. If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration

contract, then so be it.  The federal policy is about treating arbitration contract like
all others, not about fostering arbitration.

*Id.* (internal citation omitted).

Recently, the Third Circuit had a chance to apply the Supreme Court's decision in
*Morgan.*  In *White v. Samsung*, 61 F.4th 334 (3d Cir. 2023), defendant Samsung attempted to
compel arbitration over two years after litigation had been initiated in court.  The plaintiffs
argued that Samsung's participation in the litigation process, including moving to dismiss on the
merits without previously invoking the arbitration clause waived their right to compel arbitration.
The district court agreed and denied the motion to compel arbitration.  The Third Circuit
affirmed, holding that Samsung's actions were inconsistent with an intent to arbitrate.  In
rendering its decision, the Third Circuit explained that, post-*Morgan*, "the inquiry for waiver of
arbitration rights must be identical for waiver of other contractual rights."  *White*, 61 F.4th at
339.  It explained:

> Applying the general rule for waiver as *Morgan* directs, waiver occurs where a
> party has "intentionally relinquished or abandoned…a known right."  In analyzing
> whether waiver has occurred, a "court focuses on the actions of the party who
> held the right" and is informed by the "circumstances and context of each case."

*Id.* at 339 (footnotes omitted).  The Third Circuit pointed out that Samsung was on notice from
the initiation of the lawsuit that an arbitration clause might be implicated by the plaintiffs'
claims.  Nevertheless, Samsung moved to dismiss on the merits of the claims and waited over
two years to announce its intent to seek arbitration.  *Id.* at 340.  The Third Circuit explained that
Samsung's actions in moving to dismiss on the merits and waiting an extended period of time

before invoking the arbitration clause expressed an intent to litigate and, therefore, waived the right to later invoke arbitration. *Id.* at 341.[1]

    In this case, the Court must determine whether BESCO's actions in the *Beauregard* litigation "intentionally relinquished or abandoned…a known right" to arbitrate. In doing so in the post-*Morgan* landscape, the Court must apply ordinary contract principles—which begins with an examination of the relevant contractual language itself. The arbitration clause states:

> 37.1   **Dispute Resolution.**
> The CONTRACTOR and COMPANY agree to exclusively resolve any DISPUTE arising out of or relating to this CONTRACT, including its validity, interpretation, formation, construction, breach, performance, termination and enforcement in accordance with this Article, except that if either or both PARTIES are sued by a third party (not bound by this CONTRACT) in a court proceeding, each PARTY can assert any indemnity claim or any other claim against the other in the court proceeding.

(ECF No. 15-1).

    The Court finds it significant that BESCO's conduct in asserting a third-party complaint in the *Beauregard* litigation was consistent with, and expressly contemplated by, the arbitration clause, which specifically recognizes an exception permitting litigation in Court in the context of

---

[1] BESCO argues that the Court should look beyond *Morgan* to Pennsylvania law—as designated by the contractual choice of law provisions—and that Pennsylvania law still retains a higher standard for demonstrating waiver in the arbitration context, including an examination of prejudice. As a general matter, "[q]uestions concerning the interpretation and construction of arbitration agreements are determined by reference to federal substantive law." *Harris v. Green Tree Fin. Corp.*, 183 F.3d 173, 179 (3d Cir. 1999) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)). Nevertheless, "[i]n interpreting such agreements, federal courts may apply state law, pursuant to section two of the FAA. Thus, "generally applicable contract defenses may be applied to invalidate arbitration agreements without contravening the FAA." *Id.* (citing *Dr.'s Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)). There is no need for the Court to look, as requested by BESCO, to the higher standards for waiver purportedly adopted by Pennsylvania courts or to determine how, if at all, those standards interact with the considerations set forth in *Morgan*. The Court holds that even without a consideration of prejudice BESCO's actions did not demonstrate an abandoning of the right to arbitrate.

a third-party lawsuit. (ECF No. 15-7, §37.1) ("if either or both PARTIES are sued by a third party (not bound by this CONTRACT) in a court proceeding, each PARTY can assert any indemnity claim or any other claim against the other in the court proceeding.").   That is exactly what BESCO did.  BESCO's actions did not, therefore, evidence a disregard for the arbitration clause of the parties' contract.  Rather, it did exactly what the clause permitted when it filed its third-party complaint raising claims for indemnity and contribution against API in the context of the *Beauregard* litigation.

While there is no question that BESCO's actions did not violate the terms of the parties' arbitration agreement, this is not coterminous with whether its actions served to "intentionally relinquish[ ] or abandon[ ] a known right." *Morgan*, 142 S.Ct. at 1713.  The Court believes that participation in, and even initiation of, litigation in a manner consistent with an express exception in an arbitration clause will generally not, without more, effectuate a wavier of the right to arbitrate.   Indeed, litigation in compliance with a contractual exception may be compelling evidence that waiver did not occur.  The Court recognizes that in some circumstances conduct which is consistent with an exception to an arbitration clause can still effectuate a waiver.  In other words, a party does not waive the right to arbitrate merely by litigating in a manner consistent with an express exception in an arbitration clause, but compliance with such an exception is not a certain guarantee that waiver may not occur.  The Court must, as expressed in *Morgan* and *Samsung*, look at the party's conduct in "the circumstances and context of each case."

The recency of the *Morgan* and *Samsung* decisions—which upended the prejudice-based waiver analysis previously used in this and the majority of circuits—left few cases concerning claims of waiver by litigation from which the Court could draw analogies.  Nevertheless, the

Court finds persuasive the district court's analysis in the recent (post-*Morgan*) decision in *Sevier Cnty. Sch. Fed. Credit Union v. Branch Banking & Trust Co.*, 2022 WL 19403610 (E.D. Tenn. Sept. 15, 2022). There, the district court explained that "[a] federal court's role in making [the waiver] assessment is commensurate with that of non-arbitration contexts: to detect the party's 'intentional relinquishment or abandonment of a known right.'" *Id.* at *8 (quoting *Morgan*, 142 S.Ct. at 1713). It further noted, "[t]he Supreme Court recently clarified that the effect of those action on the opposing party is irrelevant to this inquiry. [ ] Thus, the overarching question is whether a party relinquished its right to arbitrate by acting in a manner completely inconsistent with that right." *Id.* (citing *Morgan*, 142 S.Ct. at 1714). The district court provided considerations that are helpful to answering that question:

> Courts consider case-specific factors in evaluating whether a party acted inconsistently with a right to arbitrate. A court's analysis may feature several non-dispositive factors, including: the degree of pretrial litigation, the length of delay before invoking arbitration, whether the parties have filed pretrial motions, whether the parties have litigated issues on the merits, and whether the parties have engaged in extensive discovery. Though each factor may be relevant to the inquiry, "waiver-through-conduct issues ordinarily turn on whether a [party] abused the litigation or pre-litigation process."

*Id.* at *9 (internal citations omitted). The Court believes that these factors are a non-exhaustive list of considerations that may be helpful in determining waiver in the post-*Morgan* legal world.

When looking at BESCO's actions in the specific "circumstances and context" of this case, they do not evidence an intentional relinquishment or abandonment of a known right to arbitrate. As explained above, the arbitration clause specifically permitted BESCO to assert its claims against API in the context of the *Beauregard* litigation.[2] The mere act of filing the third-party complaint did not constitute a waiver. Nor did BESCO's actions thereafter. BESCO filed

---

[2] API can and does dispute the merits of BESCO's claims. Those questions are for another day. Today, the Court only addresses the issue of arbitrability.

its third-party complaint on October 17, 2022.   On February 10, 2023, the parties in the *Beauregard* litigation filed a joint status report representing that the plaintiff and BESCO had "reached an agreement in principle to settle Plaintiff's claims in this case on a class wide basis." (*Beauregard* ECF No. 45, p. 1).   The joint status report further represented that "the parties have agreed that APi shall respond to BESCO's Complaint on or before February 17, 2023.  ***APi has not participated in discovery to date and it along with BESCO will seek a conference with the Court to set deadlines regarding the third-party claims that have been asserted in this case.***" (*Id.* at 2) (emphasis added).[3]   API filed a motion to dismiss on February 17, 2023.  (*Beauregard* ECF No. 46).   BESCO did not file an opposition to API's motion, but rather, filed a notice of voluntary dismissal of its claims against API, without prejudice, on March 8, 2023.  (*Beauregard* ECF No. 50); (ECF No. 1, p. 9); (ECF No. 1-7).

The minimal activity in the *Beauregard* litigation after the third-party complaint was filed weighs against a finding that BESCO abandoned by its conduct its right to arbitrate.   As the parties represented in the joint status report, API and BESCO did not engage in discovery.   API did not answer the third-party complaint.   It merely moved to dismiss the third-party complaint. When examined as a whole, the Court holds that API has not demonstrated a reasonable likelihood of success on its claim that BESCO waived its right to arbitrate.   Stated another way,

---

[3]  API's reply brief makes a completely different representation than the *joint* status report, stating that "APi made numerous discovery requests to BESCO, which BESCO ignored."  (ECF No. 31, p. 2).   What API refers to is its request in the *Beauregard* litigation that BESCO provide it with discovery exchanged between the *Beauregard* plaintiffs and BESCO.   This is not the same as participating in the discovery process.   Indeed, API was not brought into the *Beauregard* litigation until the conclusion of that process.   Notwithstanding API's attempt to recast its level of involvement in discovery, the parties' contemporaneous representation that "API has not participated in discovery to date" was accurate.

the Court does not believe that BESCO's actions constituted a waiver.  Absent a waiver of the right to arbitrate there is no basis to enjoin the arbitration initiated by BESCO.[4]

## IV. CONCLUSION

In this case, after balancing all of the required factors, the Court concludes that a preliminary injunction is not appropriate because BESCO has not waived its right to submit its dispute against API to arbitration.  API's Motion for Preliminary Injunction (ECF No. 18) will be denied and the Temporary Restraining Order issued on May 4, 2023 will be vacated.  The substantive holding underlying the Court's decision on the Motion for Preliminary Injunction addresses the same issue that controls the disposition of API's Motion to Enjoin the Arbitration Initiated by Broadway Electric Service Corp., (ECF No. 6), and BESCO's Motion to Dismiss and Compel Arbitration (ECF No. 14).  As such, based on the reasons set forth in this Opinion, the Court will deny API's motion and grant BESCO's to the extent that it asks the Court to

---

[4]  API also argues that the Court cannot find waiver because BESCO allegedly failed to comply with the contractual dispute resolution requirements set forth at Section 37.2.  It is well established, however, that whether BESCO satisfied any conditions precedent mandated by the contractual dispute resolution provisions is for the arbitrator, not the Court:

> At the same time the Court has found the phrase "question of arbitrability" *not* applicable in other kinds of general circumstance where parties would likely expect that an arbitrator would decide the gateway matter.  Thus "'procedural' questions which grow out of the dispute and bear on its final disposition" are presumptively *not* for the judge, but for an arbitrator, to decide. *John Wiley* [& Sons, Inc. v. Livingston*, 376 U.S. 543] at 557 [(1964)] (holding that an arbitrator should decide whether the first two steps of a grievance procedure were completed, where these steps are prerequisites to arbitration).  So, too, the presumption is that the arbitrator should decide "allegation[s] of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp.* [v. Mercury Constr. Corp.*, 460 U.S. 1,] 24-25(1983))

*Howsam v. Dean Witter Reynolds, Inc.,* 537 U.S. 79, 84 (2002) (emphasis in original).

compel arbitration.  The action will be stayed and administratively closed pending the resolution of BESCO's claims in the arbitration.

BY THE COURT:

WILLIAM S. STICKMAN IV
UNITED STATES DISTRICT JUDGE

May 16, 2023
Date